## CLYDE C. HARTZELL
vs.
## ACME WIRE COMPANY

Superior Court        New Haven County        File #28734

Present:   Hon. JOHN RUFUS BOOTH, Judge.

George C. Crawford;
Bernard Greenberg,                Attorneys for the Plaintiff.

Wiggin & Dana,                Attorneys for the Defendant.

**MEMORANDUM FILED SEPTEMBER 20, 1937.**

BOOTH, J.   The action is to recover certain claimed com-

missions which the plaintiff alleges are due him from the defendant. The claim is based upon a contract partly oral and partly in writing whereby the plaintiff undertook to become a sales agent for certain of the defendant's products. This contract was entered into by the parties on April 1st, 1924 and was extended by mutual agreement until May 31st, 1928 when it was terminated. According to the contract the plaintiff was to receive certain commissions on sales of such products made within the territory agreed upon. These commissions were payable on or about the fifteenth of each month and according to the contract were to be based upon the net income of invoices paid the defendant by its customers during the preceding month. It was also specifically provided in the written portion of the agreement that such commissions were not to apply on sales until said sales were paid for.

Pursuant to this contract the plaintiff entered into his employment, established many branch sales offices in various parts of the United States and foreign countries, and developed the sales of the aforesaid products to a considerable volume. From time to time the defendant paid the plaintiff commissions until about March 1st, 1928. At this time the parties were in dispute concerning the balance due the plaintiff for commissions under his contract and about April 1st, 1928 the plaintiff went to the defendant's office for the purpose of arranging a settlement of his account. After spending considerable time in checking the records of the defendant and negotiating with its treasurer and representative, Mr. Brower Hewitt, the plaintiff made claim to three classes of commissions. First, to commissions on such products of the defendant as he was privileged to sell within his allotted territory where the goods had been shipped to and paid for by the customers; second, to commissions amounting to $890.00 on sales of a certain quantity of goods which had been shipped to but had not been paid for by the customers of the defendant; third, to commissions on certain unshipped balances of so-called blanket or contract orders.

Insofar as the aforesaid first class of commissions is concerned, the parties agreed on the amount thereof and the plaintiff was paid the same in June, 1928. Insofar as the aforesaid second class is concerned, the parties agreed that the plaintiff would be entitled to a payment of $890.00 from the defendant if and when the goods in question were paid for by the purchasers thereof. Insofar as the aforesaid third class

is concerned, the parties were in complete disagreement. The amount of the aforesaid first class of commissions was $11,700.00 but as the plaintiff was indebted to the defendant for loans or advances previously made by it to him, amounting to $2,421.78, the actual cash received by the plaintiff from the defendant for said commissions amounted to $9,278.22. In return for this payment the plaintiff on June 9th, 1928 executed and delivered to the defendant a document in the following form:

"Received of the Acme Wire Company Nine Thousand Seventy-eight Dollars and Twenty-two Cents ($9,078.22) in full settlement and discharge of all claims and demands of every nature and description which I, either individually or doing business as the Hartzell Sales Company; now have or may hereafter have against the Acme Wire Company arising out of my services as sales agent for the Acme Wire Company, including claims for commissions on all sales from the beginning of my employment to May 31st, 1928; claims for damages for alleged breach of contract of employment to date, and claims for loss of business, except, however, the following items:

"1. Commissions on certain goods shipped before May 31st, 1928 but for which payment has not yet been received by the Acme Wire Company, which sums have been agreed upon by Mr. Hewitt and myself, the commissions thereon amounting to Eight Hundred and Ninety Dollars ($890.00), which commissions will be paid to me as and when accounts are collected by the Acme Wire Company.

"2. Claims for commissions on blanket or contract orders for goods not specified, ordered out or shipped on said orders on or before May 31st, 1928, which commissions I claim amount to approximately Fifteen Thousand Dollars ($15,000.) reserving the right to bring suit on these claims in Item 2 or submit the same to arbitration as I may determine later.

"I hereby guarantee that I have neither assigned, sold nor transferred to any person or corporation any of my claims against the Acme Wire Company, and that I am now the bona fide owner of said claims, dated at Chicago, Ill.; this 9th day of June, 1928. Signed, sealed and delivered in the presence of J. W. Perkins, B. D. Champe.

C. C. Hartzell (L.S.)

State of Illinois )
      )   ss   June 9th, 1928.
County of Cook )

"Personally appeared C. C. Hartzell, signer of the fore-going instrument and acknowledged the same to be his free act and deed, before me, J. R. Harmon, Notary Public."

Thereafter on June 11th, 1928 the plaintiff by his attorney executed and delivered to the defendant another document in the following form:

"Received from the Acme Wire Company the sum of Two Hundred Dollars ($200.00) additional credit to C. C. Hartzell and being an additional amount of credit over amount already allowed in settlement between C. C. Hart-zell and this company as set forth in release signed by C. C. Hartzell June 9th, 1928, this receipt and the trans-action involved herein in no way affects the full settlement effected in said release. Dated at New Haven this 11th day of June, 1928. (Signed) Bernard Greenberg, At-torney for C. C. Hartzell."

Shortly after the receipt of the last of the two aforesaid payments, to wit, on July 12th, 1928, the plaintiff instituted the present action against the defendant. The original com-plaint was obviously intended to attempt to enforce the claim of the plaintiff made to the third class of commissions before referred to, viz., that which relates to certain unshipped bal-ances of so-called blanket or contract orders, but was subse-quently amended to include claims to the first and second of the aforesaid classes.

In respect to the first class of commissions before referred to, to wit, those which the parties agreed upon and embodied in the release, the plaintiff claims that the release is to be avoided by reason of fraud in its inception. Three claims are made as a basis for this proposition. The first is the alleged concealment by the defendant of agreements of employment between it and certain salesmen at one time in the employ of the plaintiff. The evidence, however, establishes that the plaintiff was aware of the conduct of the defendant in dealing directly with these men and, indeed, that he had urged the defendant to take them over. It may be so that the actual

form of agreement was not known to him, but certainly his claim to that portion of the commissions agreed to by the defendant which would have inured to his benefit had he continued to employ and direct the salesmen, was under discussion before the release was executed. The inference is inescapable that he was in fact allowed credit for this amount in the settlement negotiations. There was no fraud actual or implied on the part of the defendant in this regard. The second ground is the claimed underselling by Mitchell-Rand Company which was alleged to have been concealed from the plaintiff by responsible officers of the defendant, or at least its existence denied by them under such circumstances that the plaintiff was justified in relying thereon. Here again the evidence is clear that the plaintiff had equal means of knowledge with the defendant and actually claimed in writing and otherwise his superior possession of the facts. His failure to insist upon this item during the settlement negotiations is more logically to be explained on the basis of a realization that there was no assertable claim to be predicated thereon than that a man of his business experience and capacity was lulled into security by the mere ipse dixit of an officer of the defendant. The third ground is that the plaintiff was not given complete access to the files of the defendant and was thereby kept in ignorance of the true amount due him. Here again it appears that for a number of days there was put at his disposal all of the records of the defendant which he chose to call for, with the exception of a certain portion thereof which were not at that time in the files, but which he himself agreed to estimate at $3\frac{1}{2}\%$ of that year's business. It has not been shown that any information material to his claim was at that time withheld from him or that any person connected with the defendant had knowledge superior to his concerning the contents of the defendant's records and failed to cooperate with him in producing all material then available for such use as he might care to make of it. That there may have been omissions from these accounts is no more at the door of the defendant than of the plaintiff himself. The negotiations started with a demand by the plaintiff for some eighteen thousand dollars and the amount finally arrived at was certainly in some measure at least a compromise upon which both parties knew was debatable ground. The claim of the plaintiff that he failed to procure each and every item on which a commission could be based, under the circumstances disclosed, does not amount to either actual or implied fraud. It is, therefore,

found that there is no fraud in the inception of the release and it must stand.

In respect to the third class of commissions before referred to, to wit, the plaintiff's claim to commissions on the unspecified balances of the so-called blanket or contract orders, which was excepted from the operation of the release, the claim of the plaintiff is that in addition to commissions on sales where the goods had been shipped and paid for, he is entitled to commissions on unshipped balances of certain orders specified in the so-called small bill of particulars. To sustain this position the plaintiff must successfully establish that his contract with the defendant was to pay a commission not only upon goods shipped and paid for but upon orders accepted by the defendant and binding upon the ordering customers. In the great majority of cases the orders on which these commissions are claimed contain the following two provisions:

"1. If Acme Wire Company reduced their prices at any time prior to May 31st, 1928, any unfilled portion of this order will be billed at the reduced price. This reduction, however, will not be retroactive.

"2. The full amount as called for in this order must be specified and taken out by May 31st, 1928. If entire quantity is not shipped by that date, then we agree that we shall be charged the difference between the price at which the order is placed and the price applicable to the quantity shipped."

Besides the clear purport of the language employed in these orders the defendant and its customers, to the knowledge of the plaintiff had placed a practical construction thereon, treating them as offers on the part of the defendant to sell to the customers such portion of the gross amount set forth therein at prices dependent on the amount actually ordered shipped or "specified". Upon payment by the customers of such specified amounts, the plaintiff was paid his agreed commission. Where the full amount was not called for by the customer by the date set forth in the order, in some instances bills were sent out pursuant to the second paragraph of the above quoted contract conditions. In no instance does it appear that the defendant enforced the actual delivery of the full amount of an order unless "specified". It must be found also that the plaintiff knew of this practical construction of these orders, as well as that his duty as sales agent was not completed to a

point entitling him to a commission until specifications for shipments and payments were made. In this regard it is very significant that until his relationship with the defendant was about to be terminated and negotiations with him were in progress no claim was made by him to a commission until these conditions were fulfilled. During much of his connection with the defendant he had many points of difference and complaint, but a claim for commission on such orders before payment to the defendant was not among them. When it was finally brought forward in May, 1928, it was promptly disallowed by the defendant. This conduct on the plaintiff's part must be explained on the basis of his realization of the scope of his sales contract. By its terms his commissions were only applicable to items shipped by the defendant and paid for by the customers. The authorities relied on by the plaintiff to establish the defendant's liability to pay commissions on the full amount of orders accepted by it are eloquent in pointing out the general law applicable where no special provision in the sales contract exists. It is said in one of the cases that had the parties intended that commissions should apply only to items paid for they could have included such provision in their agreement. This the parties did here. Not only did they so expressly agree at the outset of their relationship, but their conduct since then until the end of the plaintiff's employment shows not the slightest modification or departure from this position of their original undertaking. From a practical standpoint also, the adoption of the plaintiff's theory would in some instances make his claimed agreement so oppressive to the defendant that his commissions would exceed the total amount received by it upon his orders. No such arrangement was contemplated by either of the parties.

It is, therefore, found that the plaintiff is not entitled to commissions on any unshipped balances of the blanket or contract orders set out in his small bill of particulars.

In respect to the second class of commissions before referred to, viz., that relating to the $890.00 item which was also excepted from the operation of the aforesaid release and which the parties agreed was to be paid the plaintiff if and when the sales which formed the basis of this item were paid for by the customers, it appeared in evidence and is found by the Court that since May 31st, 1928, some customers have paid the defendant, some have not so paid and the defendant has since that date made several payments on this item to

the plaintiff. It also appeared that the list of accounts, Exhibit "II" which formed the basis of the commission agreed upon for this item, contained accounts upon which commissions had already been paid to and received by the plaintiff before the compilation of said list, which commissions amounted to $81.80. In view of this latter evidence it is obvious that the total amount of the aforesaid $890.00 item was mistakenly arrived at by the parties and that $81.80 should be deducted therefrom.

It is further found that the payments made the plaintiff by the defendant upon this item since May 31st, 1928 amounted to $421.63 and should likewise be deducted therefrom.

It is still further found that the sum of $243.82 should be deducted therefrom as such is the amount of commission items which have not yet been collected by the defendant.

These deductions therefore leave as a balance upon this item the sum of $141.75. Of this balance $102.34 has been due and unpaid to the plaintiff since January 1st, 1929, and $39.41 since January 22nd, 1929. It is, therefore, found that the plaintiff is entitled to recover of the defendant $102.34 with interest from January 1st, 1929, and $39.41 with interest from January 22nd, 1929 to date, amounting in the total to $216.52. Whereupon it is adjudged that the plaintiff recover of the defendant $216.52 damages and costs.